ROBERT S. KAYE (MD Bar # 160446929)
LAWRENCE HODAPP (D.C. Bar # 221309)
JONATHAN KRADEN (N.Y. Bar # 2847853)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-3105, fax (202) 326-3395
Attorneys for Plaintiff

JAMES W. JENNINGS, JR.
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel. (210) 384-7330
Fax (210) 384-7322
Texas Bar No. 10641400
Local Counsel

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS, WACO DIVISION

**FILED**

**SEP 1 5 2003**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| Federal Trade Commission, | ) |
| | ) |
| Plaintiff, | ) Civ. No. |
| | ) |
| v. | ) W03CV007 |
| | ) |
| Assail, Inc., | ) **FIRST AMENDED COMPLAINT** |
| Kyle Kimoto, | ) **FOR INJUNCTIVE AND** |
| Cliff Dunn, | ) **OTHER EQUITABLE RELIEF** |
| Mike Henriksen, | ) |
| Joel Best, | ) |
| Infinium, Inc., | ) |
| Market-Rep.com, Inc., | ) |
|   d/b/a Market-Reps.com, Inc., | ) |
| Brian Schofield, | ) |
| Specialty Outsourcing Solutions, Ltd., | ) |
| Jay Lankford, | ) |
| Lee Murphy, | ) |
| Summit Communications International, Inc., | ) |
|   d/b/a Advantage Capital Benefits, | ) |
| Matthew Ho, | ) |
| Capital First Benefits, Inc., | ) |
| Ben Lee, | ) |
| Premier One Benefits, Inc., and | ) |
| Johnson Salanga, | ) |
| | ) |
|       Defendants. | ) |
| | ) |

158

Plaintiff Federal Trade Commission ("FTC" or "Commission") for its complaint alleges:

1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud

and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 et seq., and Section

522(a) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6822(a), to obtain

preliminary and permanent injunctive relief, rescission of contracts, restitution, redress,

disgorgement, and other equitable relief for Defendants' deceptive and unfair acts or

practices in violation of Section 5 of the FTC Act, 15 U.S.C.§ 45, the FTC's Trade

Regulation Rule, entitled "Telemarketing Sales Rule," 16 C.F.R. Part 310, and Section

521 of the GLB Act, 15 U.S.C. § 6821.

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a), 53(b), 57b,

6102(c), and 6105(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.    Venue in this District is proper under 15 U.S.C. §§ 53(b) and 28 U.S.C. § 1391(b), (c),

and (d).

## PLAINTIFF

4.    Plaintiff, the FTC, is an independent agency of the United States Government created by

statute. 15 U.S.C. §§ 41 et seq.  The Commission is charged, inter alia, with enforcing

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts

or practices in or affecting commerce.  The Commission also enforces the Telemarketing

Sales Rule ("TSR" or "the Rule"), 16 C.F.R. Part 310, which prohibits deceptive or

abusive telemarketing practices.  The FTC is also charged, under Section 522(a) of the

GLB Act, 15 U.S.C. § 6822(a), with enforcing Section 521(a) of the GLB Act, 15 U.S.C.

§ 6821(a), which prohibits, among other things, any person from using false pretenses to

obtain from a customer, "customer information of a financial institution."

5.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes the FTC to initiate federal

district court proceedings, in its own name by its designated attorneys, to enjoin

violations of any provision of law enforced by the FTC, and to secure such equitable

relief as may be appropriate in each case, including redress, restitution and disgorgement.

15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b).

### DEFENDANTS

6.    Since 1999, Defendants, individually and in concert, and through mutual assistance of

one another, have marketed, sold, and provided services related to products and services

including purported advance-fee credit cards and other payment devices.

7.    Defendant Assail, Inc., is a Nevada corporation with its principal office and place of

business located at 1071 East 100 South, St. George, Utah.  At all times material to this

complaint, Assail provides telemarketing, accounting and other management services that

direct, control, assist, or facilitate the acts and practices described in this complaint.  It

has transacted business within the Western District of Texas or should, in the interests of

justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

8.    Defendant Kyle Kimoto is the president of Assail, Inc.  At all times material to this

complaint, he formulates, directs, controls, participates, assists, or facilitates in the acts or

practices set forth in this complaint.  He has transacted business within the Western

District of Texas or should, in the interests of justice, be a defendant in this action

pursuant to the provisions of 15 U.S.C. § 53(b).

9.      Defendant Joel Best is the vice-president of Assail, Inc.  At all times material to this

complaint, he formulates, directs, controls, participates, assists, or facilitates in the acts or

practices set forth in this complaint.  He has transacted business within the Western

District of Texas or should, in the interests of justice, be a defendant in this action

pursuant to the provisions of 15 U.S.C. § 53(b).

10.     Defendant Mike Henriksen is the chief financial officer of Assail, Inc.  At all times

material to this complaint, he formulates, directs, controls, participates, assists, or

facilitates in the acts or practices set forth in this complaint.  He has transacted business

within the Western District of Texas or should, in the interests of justice, be a defendant

in this action pursuant to the provisions of 15 U.S.C. § 53(b).

11.     Defendant Cliff Dunn is the general manager of Assail, Inc.  At all times material to this

complaint, he formulates, directs, controls, participates, assists, or facilitates in the acts or

practices set forth in this complaint.  He has transacted business within the Western

District of Texas or should, in the interests of justice, be a defendant in this action

pursuant to the provisions of 15 U.S.C. § 53(b).

12.     Defendant Infinium, Inc. is a Utah corporation with its principal offices and places of

business located at 1552 W 200 N, Cedar City, Utah, and 1579 North Main, Cedar City,

Utah.  At all times material to this complaint, Infinium provides telemarketing,

accounting and other management services that direct, control, assist, or facilitate the acts

and practices described in this complaint.  Infinium has transacted business within the

Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

13.   Defendant Market-Rep.com, Inc., is a Utah corporation, doing business as Market-Reps.com, Inc., with its principal office and place of business located at 1552 W 200 N, Cedar City, Utah, and 1579 North Main, Cedar City, Utah.  At all times material to this complaint, Market-Rep.com provides telemarketing, accounting and other management services that direct, control, assist, or facilitate the acts and practices described in this complaint.  Market-Rep.com has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

14.   Defendant Brian Schofield is the president of Infinium, Inc. and Market-Rep.com.  At all times material to this complaint, he formulates, directs, controls, participates, assists, or facilitates in the acts or practices set forth in this complaint.  He has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

15.   Defendant Specialty Outsourcing Solutions, Ltd., ("SOS") is a Texas limited partnership with its principal office and place of business located at 701 West Loop 340, Waco, Texas 76712.  At all times material to this complaint, SOS directs, controls, assists, or facilitates the acts or practices set forth in this complaint by providing customer service to consumers who purchase goods or services related to this complaint or whose bank accounts are debited as described in this complaint.  SOS has transacted business within the Western District of Texas.

16.  Defendant Jay Lankford is a manager and Chief Executive Officer of SOS.  At all times material to this complaint, he formulates, directs, controls, participates, assists, or facilitates in the acts or practices set forth in this complaint.  He resides in and has transacted business within the Western District of Texas.

17.  Defendant Lee Murphy is a manager and Chief Operations Officer of SOS.  At all times material to this complaint, he formulates, directs, controls, participates, or assists in the acts or practices set forth in this complaint.  He resides in and has transacted business within the Western District of Texas.

18.  Defendant Summit Communications International ("Summit") is a Nevada corporation, doing business as Advantage Capital Benefits, with a purported principal place of business located at 502 North Division Street, Carson City, Nevada.  In fact, this location is a corporate registration office.  The president of Summit is a Canadian resident, and the company acts in the U.S. primarily though the other Defendants and persons in concert with them.  At all times material to this complaint, Summit telemarkets, sells, assists, or facilitates the sale of various products and services in the name of Advantage Capital, including advance-fee credit cards or other payment devices.  Summit has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

19.  Defendant Matthew Ho is the president of Summit.  At all times material to this complaint, he participates, assists, or facilitates in the acts or practices set forth in this complaint.  He has transacted business within the Western District or Texas or should, in

the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

20. Defendant Capital First Benefits ("Capital First") is a Florida corporation with a purported principal place of business located at 18495 South Dixie Highway, Miami, Florida. In fact, this location is a private mail receiving facility. Capital First's president is a Canadian resident, and the company acts in the U.S. primarily though the other Defendants and persons in concert with them. At all times material to this complaint, Capital First telemarkets, sells, assists, or facilitates the sale of various products and services in the name of Capital First, including advance-fee credit cards or other payment devices. Capital First has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

21. Defendant Ben Lee is the president of Capital First. At all times material to this complaint, he participates, assists, or facilitates in the acts or practices set forth in this complaint. He has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

22. Defendant Premier One Benefits, Inc. is a Delaware corporation with a purported principal place of business located at 510 East 17th Street, Idaho Falls, Idaho. In fact, this location is a private mail receiving facility. Premier One's president is a Canadian resident, and the company acts in the U.S. primarily though the other Defendants and persons in concert with them. At all times material to this complaint, Premier One

telemarkets, sells, assists, or facilitates the sale of various products and services in the name of Premier One, including advance-fee credit cards or other payment devices. Premier One has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

23.     Defendant Johnson Salanga is the president of Premier One.  At all times material to this complaint, he participates, assists, or facilitates in the acts or practices set forth in this complaint.  He has transacted business within the Western District of Texas or should, in the interests of justice, be a defendant in this action pursuant to the provisions of 15 U.S.C. § 53(b).

24.     "Defendants" means Assail, Inc.; Kyle Kimoto; Cliff Dunn; Mike Henriksen; Joel Best; Infinium, Inc.; Market-Rep.com, Inc.; Brian Schofield; SOS; Jay Lankford; Lee Murphy; Summit Communications International, Inc.; d/b/a Advantage Capital; Matthew Ho; Capital First Benefits, Inc.; Ben Lee; Premier One Benefits, Inc.; and Johnson Salanga.

25.     "Initial Defendants" means Assail, Inc.; Kyle Kimoto; Cliff Dunn; Mike Henriksen; Infinium, Inc.; Market-Rep.com, Inc.; Brian Schofield; SOS; Jay Lankford; Lee Murphy; Summit Communications International, Inc.; d/b/a Advantage Capital; Matthew Ho; Capital First Benefits, Inc.; Ben Lee; Premier One Benefits, Inc.; and Johnson Salanga.

26.     "Assail Defendants" means Assail, Inc.; Kyle Kimoto; Joel Best; Cliff Dunn; Mike Henriksen; Infinium, Inc.; Market-Rep.com, Inc.; Brian Schofield; Summit Communications International, Inc.; d/b/a Advantage Capital; Matthew Ho; Capital First Benefits, Inc.; Ben Lee; Premier One Benefits, Inc.; and Johnson Salanga.

## COMMERCE

27.    At all times material to this complaint, Defendants have maintained a substantial course

of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFENDANTS' UNLAWFUL SALES PRACTICES

28.    At all times material to this complaint, Defendants have telemarketed and sold various

products and services to U.S. consumers, or provided substantial assistance, facilitation,

or support to the telemarketers or sellers of such products or services.

29.    Defendants Assail, Infinium and Market-Rep.com provide telemarketing and other

services, both through their own boiler rooms and employees, and through dozens of

contract boiler rooms in the U.S., Canada, India, and Caribbean countries.

30.    Defendants' telemarketing typically is directed at consumers who have poor credit

records.  Defendants give these consumers a two-part pitch.  The initial pitch begins with

a notification that in connection with a prior credit application the consumer is eligible for

a credit card.  These "credit" card packages are often sold under the names of Advantage

Capital, Capital First, and Premier One.  Although there has been no previous contact

between the sponsors of the purported "credit" card and consumers, the Defendants use

the ruse of a preexisting credit application to help them obtain information about

consumers' income and bank accounts and to frame the pitch as an offer for credit.  In

this regard, the Defendants promise consumers a MasterCard or other major credit card

that will ultimately help them improve their credit; tell consumers their payments will be

reported to credit bureaus resulting in future offers for other credit cards; and justify the

advance fees by telling consumers that they are necessary to eliminate interest and renewal fees.

31.    Following the initial pitch, Defendants begin the "verification" process.  Defendants use this "verification" process to introduce vague qualifications to the representations made during the initial pitch.  The effect is to surreptitiously change the sale from that of a credit card to a stored value "pay-as-you-go" card.  These qualifications are made in a rapid, computer-generated voice that is difficult to understand.

32.    Defendants make the following qualifications, among others, during this "verification" process:

A.    whereas the initial pitch said the consumer would receive a MasterCard to charge purchases such as hotel reservations, the verification says the consumer will receive savings on these items as a "club member;"

B.    the MasterCard referred to in the initial pitch is referred to as a pay-as-you-go MasterCard in the verification; and

C.    the MasterCard promised within 4-6 weeks in the initial pitch now is said to arrive 3-4 weeks after receipt of a "signed activation form."

33.    In addition, Defendants use the "verification" process to deceptively sell additional goods or services – "upsells" – to the consumer.  The same rapid computer voice notifies the consumer that they will receive a trial period for two "upsell" packages.  Defendants' upsells include telephone calling plans, such as ePhone Telecom, Premium Mega Saver, Mega Minute Saver, and various risk-management plans, such as Household Protection and Hartford Auto Club.  Defendants debit consumers bank accounts for these upsells,

sometimes with additional recurring monthly charges, without obtaining the consumers'
authorization for those charges.

34.     Following the "verification" process, Defendants cause debits to be transmitted to the

bank accounts of consumers. Defendants and other participants in the scheme typically

begin to debit consumers' bank accounts in a schedule that roughly follows the sequence

of "trial periods" mentioned during the telemarketing calls. However, consumers

frequently do not receive mailed information about the "credit card" package or the

upsells sufficiently in advance of the debit to use the trial periods that were promised

during the calls.

35.     Consumers commonly incur debits against their bank accounts of approximately $175 for

the "credit card" package and an additional $50 to $100 for each of the upsells sold by

Defendants. In addition, they often incur fees for overdrawn accounts or bounced checks

when unexpected debits deplete the marginal balances in their accounts.

36.     Consumers who attempt to call "customer service" to cancel their purchases and prevent

further debits are frequently unable to do so. Many consumers are told that no one can

take their calls and that they will be called back, but they are never called. Consumers

who succeed in reaching a customer service representative are subjected to some of the

same representations they faced during the initial pitch through the proposed Defendants'

use of carefully constructed rebuttals. Defendants train employees to use these rebuttals

before ever agreeing to cancel or credit an account.

37.     Even when consumers succeed in canceling some of their debits, Defendants often fail to

cancel the future debits for other products purportedly purchased during the telemarketing

call. Thereafter, those consumers are later debited for upsells of which they were not even aware.

38.   Typically, consumers do not receive a credit card or any other authorized MasterCard payment device card. Nor do they ever receive the referrals to credit reporting agencies that are promised during the initial pitch. At most, consumers receive an application form for a pay-as-you-go or stored value card – not a credit card. In the case of Advantage Capital, Capital First, and Premier One, consumers sometimes receive a piece of paper or plastic that bears the MasterCard logo, but that card is not authorized by the MasterCard network. Many of these MasterCards bear the same card number.

39.   In fact, all consumers receive is membership in a "benefits package." Defendants assert in the initial pitch that credit card purchasers will receive specified buying discounts at no additional cost. However, membership in the "benefits package" does not offer any benefits without additional costs.

40.   Defendants Assail, Infinium and Market-Rep.com, among other things, provide telemarketing, accounting, and other management services that direct, control, assist, or facilitate the above referenced acts and practices connected with the sale of advance-fee credit cards and other goods and services, including but not limited to goods and services sold under the names Advantage Capital, Capital First and Premier One (collectively "the Canadian packages").

41.   Defendants Matthew Ho, Ben Lee and Johnson Salanga participate, assist, or faciliate in, among other things, the establishment of mail drops and bank accounts for the marketing and sale of the Canadian packages.

42.     Defendant SOS provided "customer service" to purchasers of Advantage Capital, Capital First and Premier One.  At all times material to this complaint,  SOS customer service representatives represented that locations that were in fact mail drops were the principal places of business for the Canadian packages.

## DEFENDANTS' REPEATED ASSISTANCE IN SIMILAR FRAUDS

43.     Defendants Kyle Kimoto, Brian Schofield, Assail, Infinium and Market-Rep.com have been substantially involved in other deceptive telemarketing schemes that have been the subject of prior FTC lawsuits, including:

A.     *FTC v. 1st Financial Solutions, Inc.*, No. 01C8790 (N.D. Ill., filed November 14, 2001)

B.     *FTC v. Capital Choice Consumer Credit,* No. 02-21050-CIV-Ungaro-Benages (S.D. Fla., filed April 8, 2002); and

C.     *FTC v. Bay Area Business Council*, No. 02C5762 (N.D. Ill., filed August 13, 2002).

44.     In addition, in January 2001, Assail, Kyle Kimoto, and Brian Schofield were placed under order by the Division of Consumer Protection of the Department of Commerce of Utah after that agency alleged these Defendants had made misleading statements and failed to make timely refunds in connection with a nationwide advance-fee credit card telemarketing venture.  As part of that order, Defendants Assail, Kimoto, and Schofield agreed to "cease and desist" from selling credit cards or offers to improve a buyer's credit record.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

45.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "deceptive" or "unfair" acts

and practices in or affecting commerce.  Misrepresentations or omissions of material fact

constitute "deceptive" acts or practices pursuant to Section 5(a) of the FTC Act.

Moreover, under Section 5(n) of the FTC Act, an act or practice is "unfair" if it causes or

is likely to cause substantial injury to consumers that is not reasonably avoidable by

consumers and is not outweighed by countervailing benefits to consumers or to

competition. 15 U.S.C.§ 45(n).

## COUNT I

### *Advance-Fee Credit Cards*

46.    In numerous instances, in connection with the marketing of advance-fee credit cards or

other payment devices, Defendants represent, expressly or by implication that:

A.    they are affiliated with, or calling from or on behalf of, MasterCard, a bank or

other financial institution;

B.    they are calling consumers in response to a credit application made by the

consumer;

C.    after consumers pay a fee, consumers are likely or are guaranteed to receive a

MasterCard credit card or other major credit card;

D.    the purchase of a payment device increases the likelihood that a consumer's credit

will improve and that the consumer will get other offers for unsecured credit cards

in the future; or

Page 14 of  26

E.     after consumers pay a fee, consumers will receive, at no additional charge, specified discounted products or services.

47.     In truth and in fact, in numerous instances in which Defendants have made the representations above:

A.     they are not affiliated with, or calling from or on behalf of, MasterCard, a bank or other financial institution;

B.     they are not calling consumers in response to a credit application made by the consumer;

C.     after paying a fee, consumers do not receive a MasterCard credit card (or any other payment device authorized by MasterCard) or other major credit card;

D.     the purchase of a payment device does not increase the likelihood that a consumer's credit will improve and that the consumer will get other offers for unsecured credit cards in the future; or

E.     after paying a fee, consumers do not receive at no additional charge specified discounted products or services.

48.     Therefore, the representations set forth in Paragraph 43 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT 2

### *Unauthorized Billing*

49.     In numerous instances, in connection with the marketing of various products or services, Initial Defendants have caused consumers' bank accounts to be electronically debited,

A.   without having previously obtained the consumers' authorizations for such debits;

B.   prior to receipt by the consumers of information about the products or services that Initial Defendants had promised consumers they would receive before their accounts would be debited;

C.   prior to the expiration of any free trial or cancellation period;

D.   after consumers have asked to cancel the purchase of such product or service; or

E.   after consumers were denied the ability to cancel the product or service through the customer service number provided by Initial Defendants.

50.   Initial Defendants' practices set forth in Paragraph 46 cause or are likely to cause substantial injury to consumers that are not reasonably avoidable by consumers and are not outweighed by countervailing benefits to consumers or competition.

51.   Initial Defendants' practices as alleged in Paragraph 46 are unfair practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### THE FTC'S TELEMARKETING SALES RULE

52.   The Commission promulgated the Telemarketing Sales Rule pursuant to Section 6102(a) of the Telemarketing Act, 15 U.S.C.§ 6102(a).  The Rule became effective on December 31, 1995.

53.   The Telemarketing Sales Rule prohibits telemarketers and sellers from "making a false or misleading statement to induce any person to pay for goods or services." 16 C.F.R. § 310.3(a)(4).

54.   The Telemarketing Sales Rule also prohibits telemarketers and sellers from, among other things, requesting or receiving payment of any fee or consideration in advance of

obtaining or arranging a loan or other extension of credit when the seller or telemarketer

has guaranteed or represented a high likelihood of success in obtaining or arranging a

loan or other extension of credit. 16 C.F.R. § 310.4(a)(4).

55.   The Telemarketing Sales Rule also prohibits telemarketers and sellers from

misrepresenting any material aspect of the nature or terms of the seller's refund,

cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

56.   The Telemarketing Sales Rule also requires a telemarketer making outbound calls to

orally "disclose promptly and in a clear and conspicuous manner . . . (1) the identity of the

seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the

goods or services. . . ." 16 C.F.R. 310.4(d).

57.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section

18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the Telemarketing Sales

Rule constitute unfair or deceptive acts or practices in or affecting commerce, in violation

of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

58.   Defendants are:

A.   "sellers" or "telemarketers" engaged in "telemarketing," as those terms are

defined in the Rule, 16 C.F.R. §§ 310.2(r), (t), and (u); or

B.   persons who provide substantial assistance or support to "sellers" or

"telemarketers" when that person knows or consciously avoids knowing, as

defined in the Rule, 16 C.F.R. §§ 310.3(b), that the sellers or telemarketers are

engaged in acts or practices that violate 16 C.F.R. §§ 310.3(a) or 310.4.

*Defendants' Telemarketing Sales Rule Violations*

## COUNT 3

59.     In numerous instances, to induce consumers to pay for various products and services,

Defendants represent, directly or by implication, or provide substantial assistance or

support when knowing or consciously avoiding knowing that any seller or telemarketer

represents, directly or by implication:

A.      that telemarketers or sellers are affiliated with, or calling from or on behalf of,

MasterCard, a bank or other financial institution;

B.      that telemarketers are calling consumers in response to a credit application made

by the consumer;

C.      that after consumers pay a fee, consumers are likely or are guaranteed to receive a

MasterCard credit card or other major credit card;

D.      that the purchase of a payment device increases the likelihood that a consumer's

credit will improve and that the consumer will get other offers for unsecured

credit cards in the future;

E.      that after consumers pay a fee, consumers will receive at no additional charge

specified discounted products or services.

60.     In truth and in fact, in numerous instances in which Defendants have made the

representations above:

A.      telemarketers or sellers are not affiliated with, or calling from or on behalf of,

MasterCard, a bank or other financial institution;

B.     telemarketers are not calling consumers in response to a credit application made by the consumer;

C.     after paying a fee, consumers do not receive a MasterCard credit card (or any other payment device authorized by MasterCard) or other major credit card;

D.     the purchase of a payment device does not increase the likelihood that a consumer's credit will improve and that the consumer will get other offers for unsecured credit cards in the future;

E.     after consumers pay a fee, consumers do not receive at no additional charge specified discounted products or services.

61.   Therefore, the representations alleged in Paragraph 56 constitute false or misleading statements to induce a person to pay for goods or services, and violate Sections 310.3(a)(4) and 310.3(b) of the TSR, 16 C.F.R. §§ 310.3(a)(4) and 310.3(b).

## **<u>COUNT 4</u>**

62.   In numerous instances, in connection with the telemarketing of advance-fee credit cards, Defendants:

A.     have requested or received payment of a fee or consideration in advance of consumers' obtaining a credit card when a telemarketer or seller has guaranteed or represented a high likelihood of success in obtaining a credit card for such consumers; or

B.     have provided substantial assistance or support when knowing or consciously avoiding knowing that any seller or telemarketer requested or received payment of a fee or consideration in advance of consumers obtaining a credit card when a

telemarketer or seller has guaranteed or represented a high likelihood of success in

obtaining a credit card for such consumers.

63.     Defendants have thereby violated Sections 310.4(a)(4) and 310.3(b) of the Telemarketing

Sales Rule, 16 C.F.R. §§ 310.4(a)(4) and 310.3(b).

### COUNT 5

64.     In numerous instances, in connection with the telemarketing of various products or

services, Initial Defendants misrepresent, directly or by implication, or provide

substantial assistance or support to a telemarketer or seller when knowing or consciously

avoiding knowing that a telemarketer or seller misrepresents, directly or by implication,

the terms of the seller's refund, cancellation, exchange, or repurchase policies, including

but not limited to:

A.      that the seller or telemarketer provides a free trial or cancellation period during

which time the consumers can cancel at any point;

B.      that consumers will not be billed prior to the end of the free trial or cancellation

period; or

C.      that Initial Defendants provide customer response services to consumers.

65.     In truth and in fact, in numerous instances in which Initial Defendants have made the

representations above:

A.      Initial Defendants fail to honor cancellation requests made during the free trial or

cancellation period;

B.      consumers are billed prior to the end of the free trial or cancellation period; or

C.  Initial Defendants fail to provide customer response services to consumers who call the customer service number provided by the seller or telemarketer.

66.  Initial Defendants have thereby violated Sections 310.3(a)(2)(iv) and 310.3(b) of the Telemarketing Sales Rule, 16 C.F.R. §§ 310.4(a)(2)(iv) and 310.3(b).

## COUNT 6

67.  In numerous instances, in connection with outbound telemarketing of various products or services, Initial Defendants have failed to disclose promptly and in a clear and conspicuous manner, or have provided substantial assistance or support to a telemarketer or seller when knowing or consciously avoiding knowing that a telemarketer or seller failed to disclose promptly and in a clear and conspicuous manner:

A.  that the purpose of the call is to sell goods and services; or

B.  the identity of all sellers and the nature of all goods and services to be offered during the call, including goods and services to be offered during any "verification" process.

68.  Initial Defendants have thereby violated Sections 310.4(d) and 310.3(b) of the Telemarketing Sales Rule, 16 C.F.R. §§ 310.4(d) and 310.3(b).

## GRAMM-LEACH-BLILEY ACT

69.  Section 521 of the Gramm-Leach-Bliley ("GLB") Act, 15 U.S.C. § 6821, became effective on November 12, 1999, and has since remained in full force and effect. Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from "obtain[ing] or attempt[ing] to obtain customer information of a financial institution relating to another

person . . . 2) by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

70. Section 527(2) of the GLB Act, 15 U.S.C. § 6827(2), defines customer information of a financial institution as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer."

71. Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the Commission to enforce Section 521 of the GLB Act, 15 U.S.C. § 6821, "in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act ["FDCPA"] to enforce compliance with such Act." Section 814 of the FDCPA, 15 U.S.C. § 16921, provides that "[a]ll the functions and powers of the Commission under the [FTC Act] are available to the Commission to enforce compliance with" the FDCPA. Section 814 of the FDCPA also provides that a violation of the FDCPA "shall be deemed to be an unfair or deceptive act or practice in violation of" the FTC Act. Therefore, violations of Section 521 of the GLB Act constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

## COUNT 7

### *Gramm-Leach-Bliley Act "Pretexting" Violations*

72. In numerous instances, in connection with the marketing of various products or services, the Assail Defendants induce consumers to divulge their personal financial information by representing, expressly or by implication:

A.   that Assail Defendants are affiliated with, or calling from or on behalf of, a bank, financial institution, or credit card company; or

B.   that Assail Defendants already possess, and are merely verifying, consumers' bank account information.

73.   In truth and in fact, in numerous instances,

A.   Assail Defendants are not affiliated with, or calling from or on behalf of, a bank, financial institution, or credit card company; and

B.   Assail Defendants do not already possess, and are not merely verifying, consumers' bank account information.

74.   By engaging in these false representations, Assail Defendants fraudulently obtain "customer information of a financial institution," including the type, account numbers, and identity of authorized signers of bank accounts.

75.   Therefore, Assail Defendants' acts or practices violate Section 521 of the GLB Act, 15 U.S.C. § 6821.

76.   Therefore, Assail Defendants' acts or practices are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

### CONSUMER INJURY

77.  Consumers throughout the United States have suffered, and continue to suffer, substantial monetary loss as a result of Defendants' unlawful acts or practices. In addition, Defendants have been unjustly enriched as a result of their unlawful practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

78.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary equitable relief, including consumer redress, disgorgement, and restitution, to prevent and remedy violations of any provision of law enforced by the Commission.

79.  Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the Telemarketing Sales Rule, including the rescission and reformation of contracts and the refund of monies.

80.  This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injury caused by Defendants' law violations.

### PRAYER FOR RELIEF

81.  WHEREFORE, plaintiff, the Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 522(a) of the GLB Act, 15

U.S.C. § 6822(a), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.   Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief;

B.   Permanently enjoin Defendants from violating the FTC Act, the GLB Act, and the Telemarketing Sales Rule, as alleged herein;

C.   Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the GLB Act, and the Telemarketing Sales Rule, including, but not limited to, rescission of contracts, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.  Award plaintiff the costs of bringing this action, as well as such other and

additional equitable relief as the Court may determine to be just and proper.


William E. Kovacic
General Counsel

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

Robert S. Kaye (Md. Bar # 160446929)
Lawrence Hodapp (D.C. Bar #  221309)
Jonathan Kraden (N.Y. Bar # 2847853)
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C.  20580
Tel. (202)326-3105
Fax (202)326-3395

James W. Jennings, Jr.
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel. (210) 384-7330
Fax (210) 384-7322
Texas Bar No. 10641400